UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
CCM PENSION-A, L.L.C., CCM PENSION-B, :
L.L.C., CCM PENSION-C, L.L.C., CONTRARIAN :
ADVANTAGE-B, LP, CONTRARIAN CAPITAL :
SENIOR SECURED, L.P., CONTRARIAN CAPITAL :
FUND I, L.P., CONTRARIAN CAPITAL TRADE : 16 Civ. 1650 (TPG)
CLAIMS, L.P., CONTRARION CENTRE STREET :
PARTNERSHIP, L.P., CONTRARIAN EMERGING :
MARKETS, L.P., CONTRARIAN DOME DU :
GOUTER MASTER FUND, LP, P CONTRARIAN :
EM LTD., and PERMAL CONTRARIAN FUND I :
LTD., :
:
                     Plaintiffs, :
:
     v. :
:
THE REPUBLIC OF ARGENTINA, :
:
                     Defendant. :
:
------------------------------------------------------------------------X


**MEMORANDUM OF LAW OF THE REPUBLIC OF ARGENTINA IN SUPPORT
OF ITS MOTION TO DISMISS PURSUANT TO RULES 12(b)(1), (2) & (5)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii
PRELIMINARY STATEMENT .............................................................................................1
BACKGROUND ......................................................................................................................2
ARGUMENT ............................................................................................................................5
    I.   THE COURT LACKS BOTH SUBJECT MATTER AND PERSONAL
        JURISDICTION OVER CLAIMS RELATING TO THE ITALIAN BONDS ............5
        A.  Plaintiffs Have Not Established the Republic's Waiver of Immunity to Suit
            in the United States on the Italian Bonds ........................................................5
        B.  The Italian Bonds' Forum Selection Clauses, Designating Courts in Milan
            *Exclusively*, Must Be Enforced ......................................................................9
    II.  PLAINTIFFS HAVE FAILED TO SERVE THE REPUBLIC WITH PROCESS
        AS TO THE ITALIAN BONDS AND THE GERMAN BONDS AND THUS
        HAVE NOT ESTABLISHED PERSONAL JURISDICTION OVER THE
        REPUBLIC ...............................................................................................................10
CONCLUSION .......................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989) .................................................................................................. 8

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
134 S. Ct. 568 (2013) ................................................................................................ 9

*Capital Ventures Int'l v. Republic of Argentina*,
552 F.3d 289 (2d Cir. 2009) ..................................................................................... 6

*Cargill Int'l S.A. v. M/T Pavel Dybenko*,
991 F.2d 1012 (2d Cir. 1993) ................................................................................... 5, 6

*Commercial Corp. Sovrybflot v. Corporacion de Fomento de la Produccion*,
980 F. Supp. 710 (S.D.N.Y. 1997) ............................................................................ 6, 8

*Drexel Burnham Lambert Grp. Inc. v. Comm. of Receivers for A.W. Galadari*,
12 F.3d 317 (2d Cir. 1993), *cert. denied*, 511 U.S. 1069 (1994) ............................... 5

*Eaglet Corp. v. Banco Central de Nicaragua*,
839 F. Supp. 232 (S.D.N.Y. 1993), *aff'd*, 23 F.3d 641 (2d Cir. 1994) ...................... 7, 8

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
No. 90 Civ. 7360 (JSM), 1992 WL 296434 (S.D.N.Y. Oct. 6, 1992) ....................... 12

*Garb v. Republic of Poland*,
440 F.3d 579 (2d Cir. 2006) ..................................................................................... 5

*Giordano v. UBS, AG*,
No. 14 Civ. 8252, 2015 WL 5671970 (S.D.N.Y. Sept. 25, 2015) ............................. 10

*Gray v. Permanent Mission of People's Republic of Congo to United Nations*,
443 F. Supp. 816 (S.D.N.Y. 1978), *aff'd*, 580 F.2d 1044 (2d Cir. 1978) .................. 11, 12

*John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc.*,
22 F.3d 51 (2d Cir. 1994) ......................................................................................... 9

*Kao Hwa Shipping Co., S.A. v. China Steel Corp.*,
816 F. Supp. 910 (S.D.N.Y. 1993) ............................................................................ 7

*Lewis & Kennedy, Inc. v. Permanent Mission of Republic of Botswana to United Nations*,
No. 05 Civ. 2591 (HB), 2005 WL 1621342 (S.D.N.Y. July 12, 2005) ..................... 11

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972) .................................................................................................... 9

*Mar. Int'l Nominees Establishment v. Republic of Guinea*,
693 F.2d 1094 (D.C. Cir. 1982), *cert. denied*, 464 U.S. 815 (1983) ................................ 6-7

*O'Neill v. Saudi Joint Relief Comm.*
*(In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 109 (2d Cir. 2013) ......................... 6

*Phillips v. Audio Active Ltd.*,
494 F.3d 378 (2d Cir. 2007) .................................................................................... 9-10

*Proyecfin de Venezuela, S.A. v. Banco Indus. de Venezuela, S.A.*,
760 F.2d 390 (2d Cir. 1985) .................................................................................... 8

*Robinson v. Gov't of Malaysia*,
269 F.3d 133 (2d Cir. 2001) .................................................................................... 5-6

*Robinson v. Gov't of Malaysia*,
664 N.Y.S.2d 907 (Sup. Ct. N.Y. Cty. 1997) ............................................................. 11-12

*Rogers v. Petroleo Brasileiro, S.A.*,
673 F.3d 131 (2d Cir. 2012) .................................................................................... 8-9

*S.K.I. Beer Corp. v. Baltika Brewery*,
612 F.3d 705 (2d Cir. 2010) .................................................................................... 10

*Scheck v. Republic of Argentina*,
No. 10 Civ. 5167 (TPG), 2011 WL 2118795 (S.D.N.Y. May 23, 2011) .......................... 11

*Trans Commodities, Inc. v. Kazakstan Trading House*,
No. 96 Civ. 9782 (BSJ), 1997 WL 811474 (S.D.N.Y. May 28, 1997) ............................. 12

*Virtual Countries, Inc. v. Republic of S. Africa*,
300 F.3d 230 (2d Cir. 2002) .................................................................................... 9

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*,
296 F.3d 1154 (D.C. Cir. 2002), *cert. denied*, 537 U.S. 1187 (2003) ............................ 6

**Rules and Statutes**

28 U.S.C. § 1330 .................................................................................... 1, 2, 5, 6, 10

28 U.S.C. § 1603 .................................................................................................... 1

28 U.S.C. § 1604 .................................................................................................... 5

28 U.S.C. § 1605 .................................................................................................... 5, 8

28 U.S.C. § 1608 .................................................................................................... 5, 11

Defendant the Republic of Argentina (the "Republic") submits this memorandum of law in support of its motion to dismiss plaintiffs' Complaint dated March 3, 2016 (the "Complaint") pursuant to Rules 12(b)(1), (2) and (5) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, lack of personal jurisdiction and insufficient service of process.

## PRELIMINARY STATEMENT

Plaintiffs' Complaint seeks money damages and, as to some bonds, specific performance and injunctive relief based on purported violations of so-called "Equal Treatment Provisions" in connection with their alleged beneficial interests in 12 series of Republic-issued bonds governed by the laws of Italy, Germany, and England.

As to the two bonds governed by Italian law (the "Italian Bonds") that the Italian Bond Plaintiffs[1] claim to own, the Complaint suffers from a fundamental flaw – namely, an utter failure to demonstrate the existence of subject matter jurisdiction in this Court. Under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1603 *et seq.* (the "FSIA"), the Republic is presumptively immune from the jurisdiction of this Court unless plaintiffs show the applicability of a specific exception to its sovereign immunity. Plaintiffs cannot do so here – the two Italian bonds listed in the Complaint do not waive the Republic's immunity to suit in the United States, but instead provide for submission *to the exclusive jurisdiction of courts in Milan, Italy*. The Complaint does not, because it cannot, plead the existence of any immunity exception applicable to these bonds, and therefore the Italian Bond Plaintiffs' claims based on these bonds must be dismissed for lack of subject matter jurisdiction. Because there can be no personal jurisdiction over a foreign state where the Court lacks subject matter jurisdiction, *see* 28 U.S.C. § 1330(b),

---

[1] The "Italian Bond Plaintiffs" are those plaintiffs asserting claims Thirty-Five and Thirty-Six of the Complaint based on their purported ownership of the Italian Bonds and include plaintiffs CCM Pension-A, L.L.C., CCM Pension-B, L.L.C., Contrarian Capital Senior Secured, L.P., Contrarian Capital Fund I, L.P., Contrarian Capital Trade Claims, L.P., Contrarian Centre Street Partnership, L.P., Contrarian Emerging Markets, L.P., Contrarian Dome du Gouter Master Fund, LP, and P Contrarian EM Ltd.

the claims seeking relief as to the Italian Bonds must also be dismissed for lack of personal jurisdiction.  And where, as here, the governing bond documents provide for the *exclusive* jurisdiction of a foreign forum, the claims must be dismissed for that reason as well.

Neither the terms and conditions of the Italian Bonds nor the terms and conditions of the seven series of German law-governed bonds at issue in the Complaint (the "German Bonds") designate an agent for service of process for actions *not* brought in Italy or Germany.  Accordingly, to comply with Section 1608(a)(2) of the FSIA, the Italian Bond Plaintiffs and the German Bond Plaintiffs[2] are required to serve the Republic with process by delivering a copy of the summons and complaint in accordance with an applicable international convention, such as the Hague Service Convention.  They have not done so.  Plaintiffs' delivery of the Complaint to the New York branch of Banco de la Nación Argentina ("BNA") does not constitute proper service of process, as BNA is not the Republic's authorized agent for suits related to the Italian Bonds or to the German Bonds.  Because plaintiffs have failed to comply with the express service requirements of the FSIA, the Complaint must be dismissed as to claims involving both the Italian Bonds and the German Bonds for improper service of process and lack of personal jurisdiction.  *See* 28 U.S.C. § 1330(b).

## BACKGROUND

Plaintiffs are three Delaware limited liability corporations, six Delaware limited partnerships, one Ontario limited partnership, and two British Virgin Islands limited partnerships, which claim to own varying principal amounts of bonds governed by German, English, and Italian law issued by the Republic.  Compl. ¶¶ 5-16, 21-116.

---

[2] The "German Bond Plaintiffs" are those plaintiffs asserting claims One through Twenty-Eight of the Complaint based on their purported ownership of the German Bonds and include plaintiffs CCM Pension-A, L.L.C., CCM Pension-B, L.L.C., Contrarian Advantage-B, LP, Contrarian Capital Senior Secured, L.P., Contrarian Capital Fund I, L.P., Contrarian Capital Trade Claims, L.P., Contrarian Centre Street Partnership, L.P., Contrarian Emerging Markets, L.P., and Contrarian Dome du Gouter Master Fund, LP.

*The Italian Bonds*.  The Italian Bond Plaintiffs seek damages for breach of contract based on their purported ownership of €658,000 in principal amount of Republic indebtedness denominated in Euros.  The Italian Bonds are Italian instruments.  The terms and conditions of the Italian Bonds are written in Italian and are governed by Italian law.  *See* Schedule 1 to Bond Prospectus at Art. 10, Terms and Conditions of the Notes for Principal Amount of 100 Million Euro denominated "Republic of Argentina 8% 1999/2002" (the "IT0006527292 Terms and Conditions") (Ex. I); Schedule 1 to Bond Prospectus at Art. 13, Terms and Conditions of the Notes for Principal Amount of 100 Million Euro denominated "Republic of Argentina Floating Rate 1999/2003" (the "IT0006529769 Terms and Conditions") (Ex. J).[3]  The payment of interest and redemption of the Italian Bonds takes place through a central securities depository based in Milan, Italy.  IT0006527292 Terms and Conditions at Art. 7 (Ex. I);  IT0006529769 Terms and Conditions at Art. 9 (Ex. J).  The Italian Bonds were listed on the Italian bond market, IT0006527292 Terms and Conditions at Art. 9 (Ex. I), or "with another recognised stock exchange within the European Union," IT0006529769 Terms and Conditions at Art. 11 (Ex. J). Notices to holders of Italian Bonds are to be made through an announcement in an Italian daily newspaper.  IT0006527292 Terms and Conditions at Art. 10 (Ex. I);  IT0006529769 Terms and Conditions at Art. 13 (Ex. J).

Finally, the terms and conditions of the Italian Bonds make clear that "*[a]ny* dispute" which arises in relation to the Italian Bonds is "subject to the *exclusive* jurisdiction of the Courts of Milan."  IT0006529769 Terms and Conditions at Art. 13 (Ex. J) (emphasis added); *see also* IT0006527292 Terms and Conditions at Art. 10 (Ex. I) ("*Any* dispute in relation to the Notes which may arise between the Issuer and the noteholders will be subject to the jurisdiction of the Courts of Milan *without the possibility of derogation thereof*." (emphasis added)).  Accordingly,

---

[3] All exhibits are attached to the accompanying declaration of Elizabeth C. Block, dated May 13, 2016.

the Italian Bonds do not provide a basis for the assertion of subject matter jurisdiction by this Court.

*The German Bonds.*  The German Bond Plaintiffs seek both damages for breach of contract based on their purported ownership of €4,191,511 in principal amount of Republic indebtedness governed by the law of Germany as well as specific performance and injunctive relief based on purported violations of so-called "Equal Treatment Provisions" in the bond issuance documents.  The terms and conditions for the German Bonds designate an authorized agent for service of process in Frankfurt am Main, Germany *for suits brought in Germany*.  See DE0002466208 Offering Circular at 16 § 11(4), dated June 20, 2000, as amended Oct. 6, 2000 (Ex. B); DE0002483203 Offering Circular at 14 § 13(5), dated July 14, 1998 (Ex. H); DE0002923851 Offering Circular at 11 § 12(5), dated Feb. 26, 1999 (Ex. G); DE0002966900 Offering Circular at 10 § 12(5), dated Apr. 21, 1999 (Ex. F); DE0003089850 Offering Circular at 11 § 12(4), dated June 30, 1999 (Ex. E); DE0003527966 Offering Circular at 11 § 12(4), dated Oct. 21, 1999 (Ex. D); DE0003538914 Offering Circular at 11 § 12(4), dated Nov. 24, 1999 (Ex. C).

The terms and conditions of the Italian Bonds as well as the terms and conditions of the German Bonds do *not* provide an authorized agent for service of process in the United States, or for suits brought in the United States.  *See id.*; *see also* IT0006527292 Terms and Conditions (Ex. I);  IT0006529769 Terms and Conditions (Ex. J).  Nevertheless, on March 14, 2016, plaintiffs purported to serve the Complaint in this action on the Republic by delivering the Complaint to BNA at 225 Park Avenue, New York, New York, 10169.  *See* Aff. of Service filed on March 15, 2016 (Ex. A).  BNA is the authorized agent for service of process for claims brought on *U.S. bonds*, but not for suits brought in connection with the Italian Bonds or with the

4

German Bonds.  Plaintiffs did *not* serve the Republic with process under the Hague Service Convention or another applicable international service convention, as required under Section 1608(a)(2) of the FSIA where, as here, no "special arrangement" exists for service of process in the United States.  28 U.S.C. §§ 1608(a)(1), (a)(2).

## ARGUMENT

### I. THE COURT LACKS BOTH SUBJECT MATTER AND PERSONAL JURISDICTION OVER CLAIMS RELATING TO THE ITALIAN BONDS

#### A. Plaintiffs Have Not Established the Republic's Waiver of Immunity to Suit in the United States on the Italian Bonds

The FSIA provides the sole source of subject matter jurisdiction over a foreign state.  *See* 28 U.S.C. §§ 1330(a), 1604; *see also Garb v. Republic of Poland*, 440 F.3d 579, 581 (2d Cir. 2006) ("It is well settled that the only source of subject matter jurisdiction over a foreign sovereign in the courts of the United States is the Foreign Sovereign Immunities Act of 1976"). "Under the [FSIA], a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject matter jurisdiction over a claim against a foreign state." *Drexel Burnham Lambert Grp. Inc. v. Comm. of Receivers for A.W. Galadari*, 12 F.3d 317, 325 (2d Cir. 1993) (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)), *cert. denied*, 511 U.S. 1069 (1994); *see also* 28 U.S.C. § 1605(a) (listing immunity exceptions).  Where, as here, the status of the defendant as a foreign state is undisputed, *see* Compl. ¶ 17 ("Defendant Republic of Argentina is a Foreign State as defined in 28 U.S.C. § 1603"), it is plaintiffs' burden to proffer evidence "showing that, under exceptions to the FSIA, immunity should not be granted."  *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993); *see also Robinson v. Gov't of Malaysia*, 269 F.3d

133, 144 (2d Cir. 2001) (same); *O'Neill v. Saudi Joint Relief Comm. (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 109, 114 (2d Cir. 2013) (same).

Personal jurisdiction over a foreign state exists only as to claims over which there is subject matter jurisdiction. *See* 28 U.S.C. § 1330(b); *see also Capital Ventures Int'l v. Republic of Argentina*, 552 F.3d 289, 293 n.3 (2d Cir. 2009) ("Congress has provided that personal jurisdiction over a foreign state exists when the FSIA permits a suit against that state and the service of process requirements set forth in 28 U.S.C. § 1608 have been satisfied").[4] Thus, if plaintiffs fail to establish that an exception to immunity applies, "the court lacks both subject matter jurisdiction and personal jurisdiction." *Cargill Int'l S.A.*, 991 F.2d at 1016. Here the Complaint fails to demonstrate jurisdiction as to the Italian Bonds.

The Complaint contains *no* allegation that the Republic has waived its immunity with respect to the Italian Bonds. This absence is not surprising, because the relevant provisions of the Italian Bonds demonstrate no such waiver of immunity to suit in this Court.

It is a fundamental principle of law that waivers of sovereign immunity "are narrowly construed 'in favor of the sovereign' and are not enlarged 'beyond what the language requires.'" *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002) (quoting *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986)), *cert. denied*, 537 U.S. 1187 (2003). *See also Commercial Corp. Sovrybflot v. Corporacion de Fomento de la Produccion*, 980 F. Supp. 710, 713 (S.D.N.Y. 1997) (noting "judicial reluctance to find waiver absent unambiguous language"); *Mar. Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d

---

[4] As discussed further in Point II below, to establish personal jurisdiction over a foreign state, in addition to establishing subject matter jurisdiction, service must be completed in accordance with Section 1608 of the FSIA. *See* 28 U.S.C. § 1330(b).

1094, 1100 n.10 (D.C. Cir. 1982) (holding that under the FSIA, Congress contemplated waivers of a "specific and explicit nature"), *cert. denied*, 464 U.S. 815 (1983).

As one might expect, the Italian Bonds – which are instruments denominated in Euros, governed by Italian law and explicitly designating Italian courts as the forum for the adjudication of disputes – contain no reference whatever to a waiver of immunity to suits in New York courts. *See, e.g.*, IT0006529769 Terms and Conditions at Art. 13:

> These terms and conditions shall be governed by and construed in accordance with Italian law.
>
> Any dispute which may arise in relation to the Notes will be *subject to the exclusive jurisdiction of the Courts of Milan*.

(Ex. J) (emphasis added). Even if the Italian Bond Plaintiffs were not contractually *required* to litigate their claims on the Italian Bonds in Italy, the quoted language shows that there has been no waiver by the Republic of its sovereign immunity from suit in the United States. Submission to suit in Italy is not a waiver of immunity to suit in the United States under the FSIA. *Eaglet Corp. v. Banco Central de Nicaragua*, 839 F. Supp. 232, 234 (S.D.N.Y. 1993) (sovereign's submission to jurisdiction of the High Court of England "does not constitute an explicit waiver of immunity, as there is no language clearly evincing the parties' intent to waive immunity and adjudicate matters in the United States"), *aff'd*, 23 F.3d 641 (2d Cir. 1994); *Kao Hwa Shipping Co., S.A. v. China Steel Corp.*, 816 F. Supp. 910, 916 (S.D.N.Y. 1993) (foreign state's submission to foreign court's jurisdiction was not explicit or implicit waiver of immunity to suit in the United States).

With no mention of U.S. courts or U.S. law, the language of the Italian Bonds is ineffective to waive the Republic's immunity to suit here. To be effective under the FSIA, waivers must specify that they apply to suit in the United States, waiving jurisdictional immunity

7

with express reference to U.S. courts. The Supreme Court has said, "we [do not] see how a foreign state can waive its immunity under § 1605(a)(1) by signing an international agreement that contains no mention of a waiver of immunity to suit *in United States courts* or even the availability of a cause of action *in the United States*." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 442-43 (1989) (emphasis added); *Eaglet Corp.*, 839 F. Supp. at 234 ("Explicit waiver is generally found when the contract language itself clearly and unambiguously states that the parties intended waiver, and therefore adjudication, *in the United States*." (emphasis added)). The importance of expressly mentioning the United States has been repeatedly emphasized by judges of this Court and the Second Circuit. *See Commercial Corp. Sovrybflot*, 980 F. Supp. at 713 (finding "simply no authority" that waiver in certain circumstances means waiver exists "in any jurisdiction where suit can be brought"). *Cf. Proyecfin de Venezuela, S.A. v. Banco Indus. de Venezuela, S.A.*, 760 F.2d 390, 393, 395 (2d Cir. 1985) (jurisdiction where sovereign specifically waived immunity under the FSIA for "any proceedings taken in New York" and "irrevocably submit[ted]" itself to courts of New York).

Submission to suit in Italy is not a waiver of immunity to suit in the United States under the FSIA. Without such a waiver, there is no basis for jurisdiction in this Court on claims based on the Italian Bonds, and those claims therefore must be dismissed.[5]

---

[5] The Italian Bond Plaintiffs likewise have not pleaded, and otherwise cannot satisfy, the requirements for the exceptions to jurisdictional immunity found in 28 U.S.C. § 1605(a)(2), which requires that the action be based upon, *inter alia*, "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere . . . [that] causes direct effect in the United States." "In cases involving the default by a foreign state or its instrumentality on its commercial obligations, an act has a direct effect in the United States if the defaulting party is contractually obligated to pay in this country." *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 139 (2d Cir. 2012). The Italian Bonds are payable through Monte Titoli S.p.A., a securities depository based in Milan. *See* IT0006527292 Terms and Conditions at Art. 7 (Ex. I); IT0006529769 Terms and Conditions at Art. 9 (Ex. J). Where, as here, there is "no requirement that payment be made in the United States nor any provision permitting the holder to designate a place of performance" and "nothing in the language of the Bonds that suggests a reasonable understanding that the United States could be a possible place of performance," the Republic has not been stripped of its immunity through the so-called commercial activity exception. *Rogers*, 673

### B. The Italian Bonds' Forum Selection Clauses, Designating Courts in Milan *Exclusively*, Must Be Enforced

Even putting aside the issue of the Republic's sovereign immunity, the selection of "the Courts of Milan" as the exclusive forum for disputes requires dismissal by this Court of claims on the Italian Bonds. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) (courts enforce forum selection clauses unless there is a strong policy reason not to do so). The Supreme Court has recently reiterated the enforceability of forum selection clauses:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain.

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 583 (2013). Thus, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id*. at 581 (alteration in original) (citation omitted).

"The general rule in cases containing forum selection clauses is that '[w]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive.' *Of course if mandatory venue language is employed, the clause will be enforced*." *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc.*, 22 F.3d 51, 52 (2d Cir. 1994) (emphasis added) (citations omitted). *See also Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007) ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated

---

F.3d at 139-40. "Congress did not intend to provide jurisdiction whenever the ripples caused by an overseas transaction manage eventually to reach the shores of the United States." *Virtual Countries, Inc. v. Republic of S. Africa*, 300 F.3d 230, 236 (2d Cir. 2002) (citation omitted).

9

forum or incorporates obligatory venue language."); *S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 708 (2d Cir. 2010) (same).

The forum selection clauses found in the terms and conditions of the Italian Bonds employ mandatory venue language. The IT0006529769 Terms and Conditions state conclusively that "[a]ny dispute which may arise in relation to the Notes will be subject to the *exclusive* jurisdiction of the Courts of Milan." IT0006529769 Terms and Conditions at Art. 13 (Ex. J) (emphasis added). The IT0006527292 Terms and Conditions likewise indicate that "[a]ny dispute in relation to the Notes which may arise between the Issuer and the noteholders will be subject to the jurisdiction of the Courts of Milan *without the possibility of derogation thereof.*" IT0006527292 Terms and Conditions at Art. 10 (Ex. I) (emphasis added). Such mandatory forum selection clauses are enforced. *See Giordano v. UBS, AG*, No. 14 Civ. 8252, 2015 WL 5671970, at *3 (S.D.N.Y. Sept. 25, 2015) ("Courts, including the Court of Appeals for the Second Circuit, have recognized that a party may not maintain a suit in federal court when it has committed to litigate claims against its contract counter-party in another jurisdiction, such as the courts of a particular state or foreign nation.").

For this independent reason, plaintiffs' claims as to the Italian Bonds must be dismissed.

## II. PLAINTIFFS HAVE FAILED TO SERVE THE REPUBLIC WITH PROCESS AS TO THE ITALIAN BONDS AND THE GERMAN BONDS AND THUS HAVE NOT ESTABLISHED PERSONAL JURISDICTION OVER THE REPUBLIC

By statute, personal jurisdiction over a foreign state exists where (1) there is subject matter jurisdiction under the FSIA and (2) service has been made in accordance with Section 1608 of the FSIA. 28 U.S.C. § 1330(b). Because plaintiffs failed to properly serve the Republic with process with their Complaint under Section 1608, this Court lacks jurisdiction over the Republic.

Section 1608 of the FSIA delineates the exclusive means for effecting service of process upon a foreign state. This Court has previously held that where, as here, "the governing documents do not provide for an authorized agent for service of process for a suit on [similar, Republic-issued] German bonds in the United States, the second paragraph [of § 1608(a)] applies." *Scheck v. Republic of Argentina*, No. 10 Civ. 5167 (TPG), 2011 WL 2118795, at *2 (S.D.N.Y. May 23, 2011). Here, not surprisingly, neither the German Bonds nor the Italian Bonds specify an authorized agent for service of process in the United States. Although "[c]ourts have been unequivocal that § 1608(a) 'mandate[s] strict adherence to its terms,'" *Lewis & Kennedy, Inc. v. Permanent Mission of Republic of Botswana to United Nations*, No. 05 Civ. 2591 (HB), 2005 WL 1621342, at *3 (S.D.N.Y. July 12, 2005) (citing cases), plaintiffs did *not* serve the Republic through Section 1608(a)(2), which states that where no "special arrangement exists," service of process should be accomplished "by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents." 28 U.S.C. § 1608(a)(2).[6]

Because plaintiffs have failed to properly serve the Republic with process, this Court lacks personal jurisdiction over the Republic, and the action as to the Italian Bonds and the German Bonds must be dismissed. *See Gray v. Permanent Mission of People's Republic of Congo to United Nations*, 443 F. Supp. 816, 821-22 (S.D.N.Y. 1978) (dismissing complaint against the Congo Mission to the U.N. for lack of personal jurisdiction based on improper service of process under FSIA Section 1608 and vacating default judgment), *aff'd*, 580 F.2d 1044 (2d Cir. 1978); *see also Robinson v. Gov't of Malaysia*, 664 N.Y.S.2d 907, 909 (Sup. Ct.

---

[6] Section 1608(a)(1) provides that service on a foreign state shall be made "by delivery of a copy of the summons and complaint in accordance with any special arrangement between the plaintiff and the foreign state or political subdivision." 28 U.S.C. § 1608(a)(1). Plaintiffs delivered the Complaint in this action upon BNA in New York, which is the Republic's appointed agent for service of process for claims relating to *U.S.* bonds, *not* to the Italian Bonds or the German Bonds.

N.Y. Cty. 1997) (dismissing proceeding against Malaysia for improper service; "The United States has set up a national statutory scheme for service of process on foreign governments . . . . Neither a state nor an individual may choose a different method for service of process on a foreign state where the United States has already mandated the manner of service.").

Critically, it is not relevant that the Republic has been made aware of this lawsuit, despite not having been served with process. "[I]nformal notification through channels clearly outside the obvious requirements of the applicable statute cannot be substituted for those which meet the requirements." *Gray*, 443 F. Supp. at 821; *Trans Commodities, Inc. v. Kazakstan Trading House*, No. 96 Civ. 9782 (BSJ), 1997 WL 811474, at *4 (S.D.N.Y. May 28, 1997) (dismissing action and holding that where plaintiff did not follow literal requirements of Section 1608(a), "the strict compliance standard applicable to section 1608(a) mandates that this Court refuse to excuse this misstep"); *First City, Texas-Houston, N.A. v. Rafidain Bank*, No. 90 Civ. 7360 (JSM), 1992 WL 296434, at *1 (S.D.N.Y. Oct. 6, 1992) ("It is well settled that absent effective service, a court lacks jurisdiction over the defendant and all actions pertaining to such defendants . . . are void. The fact that Central Bank may have been aware of the lawsuit and the subsequent default judgment is of little import." (citations omitted)).

## CONCLUSION

For the foregoing reasons, the claims based on the Italian Bonds should be dismissed for lack of subject matter jurisdiction, lack of personal jurisdiction, and insufficient service of process, and the claims based on the German Bonds should be dismissed for insufficient service of process and lack of personal jurisdiction.

Dated: New York, New York
May 13, 2016

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: /s/ Carmine D. Boccuzzi
Carmine D. Boccuzzi (cboccuzzi@cgsh.com)
Elizabeth C. Block (eblock@cgsh.com)

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina